**TABET et al. v. TABET.    (No. 7514.)***

(Court of Civil Appeals of Texas. San Antonio. March 3, 1926. Rehearing Denied March 31, 1926.)

**1. Appeal and error ⬤═1001(1)—Judgment, restraining sale of homestead under deed of trust executed under power, not disturbed when evidence sufficient.**

In suit to restrain sale of plaintiff's homestead under deed of trust executed by brother of plaintiff's deceased husband, to whom she had given power to mortgage property for purpose of paying an attorney and paying expenses of husband's final sickness and burial, where evidence showed he received sufficient money from estate for these purposes, verdict for plaintiff will not be disturbed.

**2. Appeal and error ⬤═1046(1).**

Court's action in permitting judge's fiat to petition, writ and service thereof to be read to jury, if error, *held* harmless.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Refugia Carza Tabet against George L. Tabet and others. Judgment for plaintiff, and defendants appeal. Affirmed.

J. C. Scott, of Corpus Christi, for appellants.

Boone & Savage, of Corpus Christi, and J. T. Canales, of Brownsville, for appellee.

COBBS, J. This suit was brought by appellee against appellants for a temporary injunction to restrain them from selling lots 1, 10, 11, and 12 in block 45, in the Bluff part of Corpus Christi, Tex., the homestead of the family, under a deed of trust executed by appellee after the death of her husband, and to cancel the same. A temporary writ was granted.

The plaintiff, appellee herein, is the surviving widow of Amine. L. Tabet, who died in Nueces county on or about June 2, 1921, and the defendants George L. Tabet and Joseph L. Tabet and E. Tabet, appellants, are brothers of Amine L. Tabet, deceased.

It is alleged in her petition that appellee is unable to read or write the English language, and she had no business education of any kind, and soon after the death of her husband, Amine L. Tabet, she was persuaded by her brother-in-law, defendant George L. Tabet, to execute a power of attorney, authorizing him to manage her affairs, collect debts, and pay any obligations due, out of the proceeds of same, and also authorized him to employ counsel to assist in the prosecution of the murderer of her husband, and authorizing him for this purpose, and also, for the purpose of paying the funeral expenses, to borrow money on credit, and to mortgage and hypothecate any real estate belonging to her, as surviving widow; "but

it was not contemplated by said power of attorney that the homestead of the family should be in any way incumbered, and he was not authorized to mortgage or hypothecate plaintiff's homestead."

It is then alleged that by virtue of said power of attorney defendant George L. Tabet got possession of about $545.35 deposited in the bank, $650, the proceeds of the sale of an automobile belonging to the community property of the plaintiff and her husband, and various other moneys collected by him from persons indebted to her deceased husband; and from these moneys the funeral expenses of her husband, amounting to $418, and the fee of the attorney, amounting to $350, were paid, and there was enough money left from the moneys collected by George L. Tabet to pay the outstanding obligations against the estate, "so that no administration of said estate was necessary."

It is alleged in the next paragraph of the petition that by this power of attorney George L. Tabet was only authorized to borrow money on the credit of plaintiff for the purposes of "employing an attorney to assist in the prosecution, and to pay the funeral expenses and the expense of the last sickness of her husband." Thereafter, on or about January 1, 1923, more than a year and six months after this power of attorney was executed, and after the claims against the estate of Amine L. Tabet had been paid, defendant George L. Tabet, without being authorized, "for the purposes of defrauding the plaintiff of her homestead, signed, executed, and delivered in favor of his brother, the defendant Joseph L. Tabet," a note for $3,186.-68, due six months after its date, bearing interest at the rate of 8 per cent. per annum from its date, and he signed the said note "Refugia Garza Tabet, by George Tabet, Agent and Attorney in Fact," and afterwards, on or about April 12, 1923, he executed a trust deed in favor of defendant E. Tabet, as trustee, for the benefit of Joseph L. Tabet, "whereby he purports to convey in her name, as agent and attorney in fact for the plaintiff," lots 1, 10, 11, and 12, in block 45, in the Bluff part of Corpus Christi, which was the family homestead of the plaintiff, and "this deed of trust was dated back to read January 1, 1923, but, in fact and in truth, plaintiff alleges, on information and belief, that it was executed on the 12th day of April, 1923, and was an attempt on the part of the said George L. Tabet, in connection with his brothers, the defendants Joseph L. Tabet and E. Tabet, acting and conspiring together, to cheat and defraud the plaintiff herein of her homestead rights, and of her homestead, as herein more specifically alleged."

It is then charged that "the debt evidenced by the note described in said deed of trust is fraudulent and fictitious, and does not, in

fact and reality, exist, and said note was fraudulently executed for the purpose of cheating and defrauding the plaintiff' of her homestead rights, and said note was executed by George L. Tabet without plaintiff's knowledge and consent, and same was not made in good·faith for any of the purposes stated in the power of attorney referred to, or for any· valid indebtedness, but same was executed by defendant George L. Tabet "in conspiring with his codefendants his brothers Joseph L. Tabet and E. Tabet in an attempt to cheat and defraud the plaintiff of her homestead and her homestead rights in said property."

Said lots 1, 10, 11, and 12, in block 45, in the Bluff part of Corpus Christi, it is alleged were the homestead of the family and had been for a number of years, and these lots are contiguous and adjoining each other, and are of less value than $5,000, and plaintiff had no other real estate, and if she is deprived of these lots she would be deprived of her homestead.

It is alleged that the deed of trust constitutes a cloud on the title to the property which should be canceled and set aside. She prays for actual damages for $1,000, and further alleges the acts of appellants were maliciously done, and prays for exemplary damages in the sum of $10,000.

The answer was a general denial and a plea in reconvention for the recovery of certain moneys, and appellants prayed for foreclosure of the lien contained in the deed of trust. They alleged that Amine L. Tabet, the husband of appellee, died intestate and no administration was had upon his estate, and that appellee executed and delivered her power of attorney to George L. Tabet, her deceased husband's brother, to represent her in the management and winding up of said estate. At the time of the death of Amine L. Tabet, appellants alleged he owed many debts far in excess of $3,186.68, and left no sufficient funds with which to pay these, and that appellee specially empowered George L. Tabet, as her agent and attorney in fact, to borrow money and pay off the debts, and authorized him to employ counsel to assist in the prosecution of S. Ramon for the murder of her husband, and to pay for the expenses of· her husband's last illness, and to borrow money for such purposes. It was further alleged by appellants that at the time of his death, and prior to the time of his death, Amine L. Tabet, deceased, owed debts aggregating $1,413.80, and when he died he left no money on hand with which such debts could be paid, and after his death plaintiff contracted other debts for the payment of which she had no money, and such debts aggregated about $1,772.88, and, in order to procure money with which to pay such total indebtedness, aggregating $3,186.68, it became necessary to borrow money.

The case was tried by a jury upon special issues, which were answered in favor of appellee, and the court entered judgment canceling the note for $3,186.68, perpetuating the injunction and decreeing that defendants be forever enjoined from asserting any right under said deed of trust.

That portion of the power of attorney authorizing the attorney in fact to mortgage the estate provides as follows:

"And I also specially authorize and empower my said agent and attorney in fact for me and in my name to employ an attorney to assist in the prosecution of S. Ramon, the murderer of my husband, and for me and in my name and on my credit to borrow, if necessary, sufficient money to compensate and pay such attorney, and also to pay the expenses of the final sickness and funeral of my husband, and, to that end, he is now hereby authorized and empowered to make and execute for me and in my name, as the surviving widow of said Amine L. Tabet, deceased, any promissory note or other form of obligation to any person or to any bank for the purpose of securing necessary funds for such purposes, and also to mortgage or otherwise hypothecate any real property belonging to me, as the said surviving widow, to secure payment of such note or obligation."

Now the authority for borrowing money is limited to the purpose only of borrowing, "if necessary, sufficient money to compensate and pay such attorney (to prosecute S. Ramon, the murderer of her husband), and also to pay the expenses of the final sickness and funeral of my (her) husband." It authorized him for those purposes only "to mortgage or otherwise hypothecate any real property belonging to me, as the said surviving widow, to secure payment of such note or obligation."

The appellee carried on the business of her late husband, and paid to her said attorney sums of money at different periods of time. There was on hand at the date of the death of Amine L. Tabet large sums of money that were delivered to appellant by appellee.

Appellant claims·he was required to borrow from his brother $3,186.68 to meet the indebtedness of the estate, and executed and delivered to him a promissory note for that amount, and, as agent and attorney in fact, executed and delivered to him the deed of trust on the real estate, which included appellee's homestead, to secure the same.

As to the amount of money received and the debts paid by appellant, ·the question became an issue purely of disputed fact. The whole field of accounts covered by the testimony pro and con were presented to the jury by the court's special issues.

[1] The testimony established that only $300 of the $3,186.68, the amount of the note, was advanced by George Tabet. Not one of the items mentioned in appellant's statement was for funeral expenses or attorney's fees. The item of $1,000 loaned by Joseph Tabet to his brother Amine L. Tabet on March 15, 1919, was not evidenced by any written con-

tract and the plea of limitation of two years was interposed against it.

The court submitted the following issues to the jury:

"First. Did Amine L. Tabet pay his brother Joseph L. Tabet the $1,000 loaned him March 15, 1919?

"Second. Were the remaining items constituting $2,186.68 paid from funds in the hands of George Tabet belonging to the estate of his brother Amine L. Tabet?

"Third. Did George Tabet have in his possession at the time he paid these items sufficient funds of the estate with which to pay the $4,186.68?"

These questions were submitted by the court to the jury in addition to others submitted by appellants raising the same issues, and all were answered by the jury favorably to the appellee.

From the evidence and the findings of the jury it will be seen that the real items constituting the note amounted to $2,686.68. Now deduct the $1,000 claimed by Joseph Tabet, which the jury found was repaid by his deceased brother before his death, and the balance will be $1,686.68. The appellant received $2,676.22 from the estate. This will leave in appellant's possession about $1,000, and deducting this from the amount of the note leaves the sum of $2,186.68. The evidence shows, as found by the jury, that appellant received $2,676.22 from the estate, with which to pay the sum of $2,186.68.

This is a fact case and both parties presented their claims and accounts fully to the jury, and they found against the contention of appellants upon ample evidence. We cannot here set out the evidence and accounts in full, because of their great length, and it is not necessary to do so for the jury had them all before them and passed on them favorably to appellee.

[2] We do not think any harm was done on the part of the court in permitting the judge's fiat to the petition, the writ and service thereof to be read to the jury. We see no reason or good purpose for so using the writ, but if error at all, certainly it was a harmless one.

We have read and considered each of the assignments and propositions thereunder, and, finding no reversible error committed, the judgment is affirmed.